Barbara A. PATCHELL  *v.*  WAL-MART STORES, INC.

CA 03-1087                                       184 S.W.3d 31

Court of Appeals of Arkansas
Division I
Opinion delivered May 19, 2004

[Rehearing denied June 16, 2004.]

*Sterling Law Firm, P.A.*, by: *Brent Sterling*, for appellant.

*Bassett Law Firm*, by: *Tod C. Bassett*, for appellee.

WENDELL L. GRIFFEN, Judge. Barbara Patchell appeals from a decision of the Arkansas Workers' Compensation Commission (Commission) that denied her continued medical treatment for a chronic-pain condition associated with her compensable injury. Appellant contends that the Commission erred because there is not substantial evidence to support the finding that she failed to prove by a preponderance of the evidence that she is entitled to

additional medical treatment. We hold that the Commission's decision that appellant is not entitled to additional treatment does not display a substantial basis for denial of relief. Thus, we reverse.

Appellant began working for Wal-Mart in February of 1996 as a store-planning mailroom employee. Her job consisted of sorting and delivering mail. On April 24, 1997, appellant was moving a table when she suffered a compensable injury to her coccyx after she fell over some boxes onto a concrete floor. Appellant was treated by the company doctor, Dr. James Arkins, on May 9, 1997, due to the pain she was experiencing in the rectal area. Dr. Arkins diagnosed appellant with a fractured coccyx, prescribed ibuprofen and Darvocet for her pain, and then referred appellant to Dr. Roger Dickinson, an orthopedic surgeon. Dr. Dickinson treated appellant from April 24, 1997, until her claim was denied on March 28, 2001. He diagnosed appellant with a syndrome of coccydynia secondary to her fall and performed injections that appellant claims "took the edge off," but did not alleviate the pain. Dr. Dickinson referred appellant to Dr. William Ackerman in July 1998 for epidural steriod injections. According to Dr. Ackerman's notes, appellant sustained a fracture to her coccyx. Dr. Dickinson also ordered therapy and prescribed a coccyx cushion.

Wal-Mart's claim-management agency directed appellant to undergo three independent medical examinations. The first was with Dr. Carl Kendrick on April 21, 1999. Dr. Kendrick did a complete physical examination and diagnosed appellant with coccydynia that was persistent and directly related to the injury she sustained at Wal-Mart. He also noted a developing degenerative disc at L4 and L5 with facet arthropathy that is not related to her injury. He assessed appellant with a three-percent disability rating to the body as a whole as a result of the injury. Meanwhile, appellant continued to see Dr. Dickinson for pain medications and injections. Dr. Dickinson took her off work on May 15, 2000, because her pain had worsened.

Wal-Mart directed that appellant submit to a second independent examination which was performed on July 6, 2000, by Dr. Michael Wolfe. Dr. Wolfe took x-rays, conducted a rectal exam, and agreed with Dr. Kendrick and Dr. Dickinson that appellant was suffering from coccydynia. Dr. Wolfe also noted mild degenerative changes in the lower lumber spine to both the discs and the facets. He opined that the pain symptoms were related to the injury.

Appellant was off work for a three-month period but continued to be under the care of Dr. Dickinson, who prescribed injections every two or three months for appellant's pain. On February 8, 2001, appellant saw Dr. David Cannon for pain management upon a recommendation from Wal-Mart's claim management case manager and Dr. Dickinson. Dr. Cannon discussed the following treatment options with appellant: (1) a TENS trial, (2) addition of Neurontin to see if it is helpful, (3) consideration of a possible cryoneurolysis of the sacrococcygeal ligament and nearby structures; or (4) placement on long-acting opioids. He presented the options to the Wal-Mart caseworker, and the caseworker and appellant were to discuss which of the options they would pursue. Dr. Cannon's recommendation was the TENS unit and the Neurontin. Appellant began a trial use of TENS unit on February 27, 2001. According to appellant's testimony, she discontinued using the TENS unit because it made welts on her body where the electrodes attached to the patches. There is no record that she received a prescription for Neurontin.

Appellant testified that when she returned home from her daughter's funeral on March 28, 2001, she found a card in her mailbox directing that she call her caseworker. When she called her caseworker, appellant was told that as of March 28, 2001, she would be denied any further coverage. The record includes a letter from Wal-Mart's attorney to counsel for appellant dated July 16, 2001, in which Wal-Mart's attorney asked counsel for appellant to consult his client on whether she was interested in resigning and settling her case by joint petition. A relevant portion of the letter reads as follows:

> If the above does not pan out, then my client will probably want to have another IME performed here in Northwest Arkansas. I am not sure where that would lead but there has got to be something better for her than being placed indefinitely on long-acting opioids per Dr. Cannon's report on February 8, 2001. Maybe another physician can give everyone a fresh perspective of the situation and possibly offer up a treatment plan that has not been previously considered. Please understand that it is not my client's intent to cut Ms. Patchell's future medical treatment off altogether. To the contrary, my client is just having a big problem with that particular recommendation of Dr. Cannon.

So at Wal-Mart's direction, appellant submitted to a third independent examination that was conducted by Dr. David Davis, a neurologist, on September 18, 2001. Dr. Davis performed a

physical examination on appellant. Dr. Davis opined that appellant may have been addicted or at least habituated to Roxicet because she had been taking it six times per day for four years. He suggested that she needed to be in a formalized program of gradual drug withdrawal and substitution with the expectation that she would be on no opiate pain medications. According to Dr. Davis, there is little verification for appellant's pain, because he found no un-healed or displaced fractures. However, on October 12, 2001, after reviewing the medical records from her previous physicians, Dr. Davis reported, "it is agreed that she has coccydynia or coccygeal pain." Even with this recommendation, Dr. Davis recommended that the gradual drug-substitution and replacement-treatment regimen be directed by Dr. Cannon. Instead of providing appellant with some treatment for her chronic pain condition, however, Wal-Mart refused to provide any further treatment.

Appellant admits that her family physician, Dr. Jerry Hitt, prescribed additional medication for her during the time she was receiving medications for her coccyx injury. She testified that Dr. Hitt did not write any prescriptions other than the one on April 1, 2000, and she never requested pain medications from him. Appel-lant suffers from degenerative arthritis, and had surgery for work-related carpal tunnel syndrome in both hands. She was sixty-four at the time of the workers' compensation proceeding on May 8, 2002.

An administrative law judge entered an opinion on May 30, 2002, finding that appellant met her burden of proving by a preponderance of the evidence that she was entitled to additional medical treatment as recommended by Dr. Dickinson, her treating physician. The Commission reversed that finding and denied appellant's claim for further medical benefits in a split decision on June 18, 2003.

The issue litigated before the Commission was whether appellant was entitled to the medical treatment recom-mended by Dr. Dickinson, her treating physician. On appeal, we analyze whether the Commission's decision to deny benefits contains a substantial basis for denial of relief. *Superior Indust. v. Thomaston,* 72 Ark. App. 7, 32 S.W.3d 52 (2000). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the findings are supported by substantial evidence. *Id.* The Commis-sion's decision will not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if

presented with the same facts. *Id.* We do not review the decision of the administrative law judge; we review the decision of the Commission. *Daniels v. Affiliated Foods Southwest,* 70 Ark. App. 319, 17 S.W.3d 817 (2000).

■ When medical testimony is conflicting, resolution of the conflict is a question of fact for the Workers' Compensation Commission. *Barksdale Lumber Co. v. McAnally,* 262 Ark. 379, 557 S.W.2d 868 (1977). It is the province of the Commission to weigh conflicting medical evidence, but the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Hill v. Baptist Med. Ctr.,* 74 Ark. App. 250, 48 S.W.3d 544 (2001).

■ The workers' compensation law provides that an employer shall provide the medical services that are reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Repl. 2002). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown,* 82 Ark. App. 600, 120 S.W.3d 153 (2003).

■ We hold that the Commission's decision does not display a substantial basis for denial of additional medical treatment. According to the Commission, appellant failed to prove by a preponderance of the evidence that she was entitled to medical treatment because her coccygeal fracture was never firmly established from any objective measurable standpoint. However, all the physicians who treated appellant agree that she suffers from coccydynia, and several agreed that she sustained a coccygeal fracture. Dr. Arkins' diagnosis was a fractured coccyx. Dr. Dickinson's notes showed that appellant sustained a fracture to her coccyx. Both Dr. Kendrick and Dr. Wolfe opined that appellant suffers from coccydynia related directly to her compensable injury, and a developing degenerative disc at L4 and L5.

■ Even Dr. Davis, the third physician appellant was referred to by Wal-Mart, agreed that appellant had coccydynia or coccygeal pain. Before Dr. Davis reviewed appellant's medical records, he found little verification for her pain, because he found no unhealed or displaced fractures. After viewing the records, however, Dr. Davis verified the view that appellant had a sacral fracture, but reasoned that it had healed. According to Dr. Davis, "With respect to her problem, it seems agreed that she has coccydynia or coccygeal pain." There is no evidence in the record

that appellant does not suffer from coccydynia or coccygeal pain, or that her pain condition stems from anything other than the compensable injury she sustained at Wal-Mart. Furthermore, it is well settled that a claimant may be entitled to ongoing medical treatment after the healing period has ended, if the medical treatment is geared toward management of the claimant's injury. *Hydrophonics, Inc. v. Pippin,* 8 Ark. App. 200, 649 S.W.2d 845 (1983).

It is clear that the Commission arbitrarily used the concern that Dr. Davis expressed about addiction to narcotics as justification for denying appellant any additional treatment for the chronic pain condition that even Dr. Davis acknowledged existed. This decision, and Wal-Mart's effort to obtain this result, contradicted the July 16, 2001 letter written by Wal-Mart's attorney to counsel for appellant that mentioned Wal-Mart's desire for appellant to undergo a third independent evaluation in northwest Arkansas because another physician could provide a fresh perspective of the situation. That letter stated, "Please understand that it is not my client's intent to cut Ms. Patchell's future medical treatment off altogether." Wal-Mart's action to deny any additional treatment to appellant, in the face of its own lawyer's letter and the overwhelming proof of her pain condition, is telling.

The Commission's decision also appears contrary to Dr. Davis's recommendation. Nothing in the recommendation suggests appellant should not receive any additional medical treatment. His recommendation included gradual drug withdrawal and *substitution.* His goal was to prevent appellant from using opiate pain medications. Nothing in the record suggests that Dr. Davis's recommendation was that appellant be completely barred from additional medical treatment; rather, he intended a treatment course that would address his concerns that appellant was addicted to the drugs she was using.

The record amply demonstrates that appellant suffers from chronic pain related to the injury she sustained while working at Wal-Mart. There is no proof that appellant's condition does not warrant further treatment. To the contrary, each of the three physicians who independently examined appellant, at Wal-Mart's specific direction, recommended additional treatment for her chronic-pain condition.

We hold that the Commission's findings are not supported by substantial evidence, because fair-minded persons could

not have reached the same conclusion if presented with the same facts. Thus, we reverse and remand appellant's claim to the Commission and direct that it award additional medical benefits consistent with this opinion.

Reversed and remanded.

STROUD, C.J., and PITTMAN, J., agree.