Henry HAMILTON *v.* GREGORY TRUCKING
and Houston General Insurance Company

CA 04-861                                                    205 S.W.3d 181

Court of Appeals of Arkansas
Opinion delivered March 16, 2005

*Walker, Shock, Cox & Harp, PLLC,* by: *Eddie H. Walker, Jr.,* for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP,* by: *E. Diane Graham* and *R. Chris Parks,* for appellee.

S AM BIRD, Judge. Henry Hamilton appeals the April 22, 2004, decision of the Workers' Compensation Commission that denied payment of expenses incurred for medications prescribed for him after he sustained a compensable injury to his lower back on May 5, 1995. After conducting a hearing on July 15, 2003, the administrative law judge found that two of the prescription medications were reasonably necessary medical services but that six others were not; additionally, the law judge found that Hamilton was entitled to a change of physicians in the field of pain management. The Workers' Compensation Commission adopted and affirmed the decision of the law judge in a split decision. On appeal Hamilton contends that the Commission erred in determining that the medications, first prescribed by his authorized treating physician and subsequently re-prescribed by other physicians, were not reasonable and necessary. We hold that the Commission erred in determining that these medications were not reasonable and necessary medical services in connection with Hamilton's compensable back injury. Therefore, we reverse and remand the decision of the Commission.

█ The employer shall promptly provide for an injured employee such medical, surgical, hospital, chiropractic, optometric, podiatric, and nursing services and medicine . . . as may be

reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Supp. 2003). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). What constitutes reasonably necessary treatment under the statute is a question of fact for the Commission. *Dalton v. Allen Eng'g Co.*, 66 Ark. App. 201, 989 S.W.2d 543 (1999).

Here, the evidence introduced at the hearing included Hamilton's testimony; bills for his prescriptions from June 19, 2001, through March 8, 2002; medical evaluations from the Brackman Family Clinic in Fort Smith from October 21, 2002, until April 4, 2003; and chart records from Dr. Raymond Sorensen at the Pain Institute of Tulsa, dated December 10, 2002, to March 11, 2003. The Commission's decision contained the following findings based upon the evidence presented:

> 5. The claimant has proven by the greater weight of the credible evidence that outstanding expenses incurred for medication in the form of Amitriptyline and Effexor constitute expenses incurred for reasonably necessary medical services. Pursuant to Ark. Code Ann. § 11-9-508, these expenses are the liability of the respondents herein . . . .

> 6. The claimant has failed to prove by the greater weight of the credible evidence that any of the outstanding medical expenses for medication in the form of Oxycontin, Roxicodone, Oxyir, Cloraz Dipot, Metodropramide, and Axid constitute expenses incurred for reasonably necessary medical services, as that term is used in the Act. . . .

> 7. The claimant is entitled to his one time change of physician, pursuant to Ark. Code Ann. § 11-9-514, to Dr. William Money, a chronic pain management specialist in Fayetteville, Arkansas. . . .

### The Claimant's Testimony

Hamilton testified as follows regarding the medical treatment that he received for his compensable back injury of 1995, beginning with his visit to the emergency room where Dr. Munir Zufari saw him. Dr. Zufari referred Hamilton to Dr. Robert Kale, who administered epidural steroid injections to Hamilton and

treated him for about six months until Dr. Landherr performed his back surgery. Hamilton had undergone back surgery prior to 1995, but after the surgery for his compensable injury he went to Dr. Fisher for pain control. Dr. Fisher prescribed Lorcet Plus and Trimethadone, which Hamilton said "didn't work." Hamilton stopped seeing Dr. Fisher in the fall of 1998 because the two of them "were not seeing eye to eye" on medication. Hamilton returned to Dr. Kale, who provided Hamilton's care until the medical board took away his license about three years later. The parties did not dispute that, until his medical license was suspended, Dr. Kale was Hamilton's authorized treating physician and prescribed various medications for him.

Hamilton testified that the Oxycontin, Roxicodone, and Amitriptyline prescribed by Dr. Kale definitely provided him with relief. Hamilton stated that Oxycontin was the best pain medication he ever had taken, that other doctors tried him on other medications, but that none provided as much relief as the Oxycontin. Rating his pain as an eight without Oxycontin and two or three with it, Hamilton said that he experienced a lot of pain in periods of time when he ran out of it. He testified that the prescribed Roxicodone, also a pain medication, was for "breakthrough pain." He stated, "I take the Oxycontin every eight hours, and if it doesn't last eight hours I wake up at three o'clock in the morning and can take a couple of the Roxicodone and it will get me through to the next time for the Oxycontin."

Hamilton testified that he called the offices of Dr. Fisher and a Dr. Lennington after Dr. Kale's license was taken away, but that those doctors would not accept him as a patient. Hamilton described his feelings as "desperate." He was treated for a while by Dr. Zufari, who began reducing Hamilton's Oxycontin intake and was going to take all of it away. Hamilton did not continue under Zufari's care because the pain became worse when his medication was reduced.

In October of 2002 Hamilton went to Dr. Terry Brackman and gave him approximately thirty-five pages of medical records obtained from Dr. Kale. Hamilton knew that Brackman could not write prescriptions. On the first visit Hamilton was given four injections, which Hamilton testified did not help "a bit" at the time. Dr. Brackman later did a chiropractic manipulation, which did not help, and Hamilton "wasn't going to have any more" manipulations. On his third visit to Dr. Brackman's clinic, Hamil-

ton saw Dr. Ronald Meyers, who prescribed Oxycontin and referred him to Dr. Raymond Sorensen in Tulsa.

Hamilton had four monthly visits with Dr. Sorensen, beginning in December of 2002. Dr. Sorensen wrote him prescriptions for Oxycontin and Roxicodone on the first three visits. On two of the visits they talked about a spinal-cord stimulator, but Hamilton told Sorensen on his last visit that he was not interested in a permanent one because the temporary one that he tried for a week did not work.

Hamilton went back to the Brackman Clinic, but Dr. Meyers had left; Dr. George Howell, whom Hamilton had not met at the time, prescribed Oxycontin on two occasions. In May of 2003 Hamilton saw Dr. Brackman and requested "a lower dosage of Oxycontin and a larger number of breakthroughs." Later in the month, Hamilton went to the Brackman Clinic and picked up a prescription that Dr. Howell had written for him. Hamilton had his first actual appointment with Dr. Howell in June 25, 2003, and Howell wrote another prescription for Oxycontin and Roxicodone.

Hamilton testified that, based upon his experience with and without Oxycontin, he could not perform his normal activities of daily living without any Oxycontin at all and he considered it an emergency to get further prescription medications "once nobody else would prescribe it." He asked that the Commission designate Dr. Brackman as his primary treating physician.

### The Commission's Opinion

The Commission's opinion discussed medical treatment for Hamilton's chronic pain following his last back surgery in November of 1995. The Commission observed that the three years of treatment by Dr. Kale included prolonged use of massive doses of the narcotics Oxycontin and Roxicodone as well as other medications. Adopting the opinion of the administrative law judge, the Commission further found:

> While massive dosages of powerful narcotics, such as Oxycontin, would clearly act to significantly reduce any pain symptoms the claimant may have experienced, the prolonged continuous use of such massive doses of powerful narcotics is not generally recognized by the medical community as being appropriate treatment for long term chronic pain management. In fact, it is generally accepted that

over a relatively brief period of time the therapeutic effectiveness of such powerful narcotics begins to lessen, requiring more and more massive dosage to accomplish the same degree of pain relief. Ultimately, all that is left is the addiction to the medication, itself.

In the present case, the claimant testified that the medication provided him by Dr. Kale only reduced his pain from a level of 8 or 9 to a level of 2. Clearly, 1440 mg. of Oxycontin over a 24 hour period would normally be expected to do more than this, particularly when large doses of Roxicodone are added. In fact, such a massive dosage of narcotics would be reasonably expected to prevent the claimant from feeling anything at all.

It is obvious from the evidence presented that the claimant now has a substantial addiction to these narcotics. . . .

I have been involved in other similar cases where Dr. Kale was the treating physician. As a result, I am aware of his theory that chronic pain can be alleviated by using massive doses of strong narcotics to "break the pain cycle." This theory has not found acceptance by the general medical community. However, it is apparent in this case that these massive doses of strong narcotics have not "broken" the claimant's "pain cycle" after a period of approximately three years. Clearly, if this treatment modality had a reasonable expectation of accomplishing this desired goal, it would have done so within this period of time. Even medically appropriate treatment which initially has a reasonable expectation of success, loses this expectation when it fails to successfully accomplish its purpose within a reasonable period of time.

In summary, I find the claimant has failed to prove that the massive doses of Oxycontin and Roxicodone prescribed over an extended period of time by Dr. Kale and Dr. Zufari constitute reasonably necessary medical services.

The Commission found that, for the same reasons as those regarding Oxycontin and Roxicodone, Hamilton failed to prove that Oxyir and Cloraz Dipot constituted reasonably necessary medical services associated with his compensable injury. The Commission also found that Hamilton failed to prove that Metodopramide and Axid were necessitated by or related to his compensable injury. Stating that anti-depressants such as Amitriptyline and Effexor were commonly recognized by the general medical community as an acceptable long-term treatment modal-

ity to provide relief in case of chronic pain, the Commission found that the long term use of these medications constituted reasonably necessary medical services associated with the claimant's compensable injury.

## Appellant's Argument

On appeal, Hamilton challenges the rationale for the Commission's denial of his claim for expenses incurred for prescribed medications. He points out that the dispute regarding the medications prescribed by Dr. Kale, his treating physician, did not arise until Kale's license was suspended. Hamilton argues that he is being victimized because of Dr. Kale's losing his license. He also argues that, even if Dr. Kale inappropriately prescribed the medications, Hamilton should not be responsible for paying for pain medications to which the law judge indicated that Hamilton was addicted, when those medications were prescribed as a direct result of his job-related injury. He argues that the prescriptions for Oxycontin and Roxicodone written by Drs. Meyers, Howell, and Sorensen were simply replacement medicines for what Dr. Kale prescribed over several years. He points to his own testimony that the prescribed medications provided substantial relief. Hamilton notes that although the Commission found that he was substantially addicted to the prescribed narcotics, it found that these medications were not reasonably necessary. He concludes that the Commission has taken on the role of prescribing medications without medical guidance and, notwithstanding its finding of his substantial addiction to the narcotics, has arbitrarily withdrawn authorization for him to receive Oxycontin and Roxicodone although four doctors prescribed these medications for him. We agree with these arguments.

## Standard of Review

In determining the sufficiency of the evidence to support the findings of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if those findings are supported by substantial evidence. *Winslow v. D&B Mech. Contrs.*, 69 Ark. App. 285, 13 S.W.3d 180 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Dalton v. Allen Eng'g Co.*, 66 Ark. App. 201, 989 S.W.2d 543 (1999). When an appeal is taken from the denial of a claim by the Workers' Compensation

Commission, the substantial-evidence standard of review requires that we affirm the decision if the Commission's opinion contains a substantial basis for the denial of relief. *Id.*

█ It is well-settled that the Commission can reject or accept medical evidence and determine the probative value to assign to medical testimony presented in a case. *See Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 57 S.W.3d 735 (2001). The Commission has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *See id.* Although it is within the province of the Commission to weigh conflicting evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004).

## Conclusion

The *Patchell* court reversed the denial of workers' compensation benefits for additional medical treatment where the claimant's treating physician was concerned about her addiction to opiate pain medications. *See id.* We set forth the following reasons for holding that the Commission's opinion displayed no substantial basis for the denial of the claim:

> The Commission's decision also appears contrary to Dr. Davis's recommendation. Nothing in the recommendation suggests appellant should not receive any additional medical treatment. His recommendation included gradual drug withdrawal and *substitution.* His goal was to prevent appellant from using opiate pain medications. Nothing in the record suggests that Dr. Davis's recommmendation was that appellant be completely barred from additional medical treatment; rather, he intended a treatment course that would address his concerns that appellant was addicted to the drugs she was using.

> The record amply demonstrates that appellant suffers from chronic pain related to the injury she sustained while working at Wal-Mart. There is no proof that appellant's condition does not warrant further treatment. To the contrary, each of the three physicians who independently examined appellant, at Wal-Mart's specific direction, recommended additional treatment for her chronic-pain condition.

*Id.* at 236, 184 S.W.3d at 35-36.

■ Here, there was proof that Hamilton's authorized physician and several successive physicians prescribed medications to relieve the pain associated with Hamilton's compensable injury, and there was no medical proof to support the Commission's finding that some of those medications should be stopped completely. The Commission cited no medical evidence or authority for concluding that Hamilton should feel nothing at all after taking certain dosages of Oxycontin and Roxicodone, or for assessing particular treatments as lacking acceptance within the general medical community. In concluding that Hamilton had not proven that particular prescriptive medications were reasonably necessary, the Commission ignored its own finding that he was substantially addicted to narcotics prescribed by his authorized treating physician and successors, and it overlooked its own order that Hamilton should be provided a new physician in the field of pain management for continued follow-up care or medical maintenance. While apparently denying Hamilton's claim because of his addiction to medications prescribed for his work-related condition, the Commission points to no evidence that any addiction to these medications is unrelated to the medical treatment he was receiving for his work-related injury.

■ We hold that fair-minded persons, if presented with the evidence before the Commission, could not have reached the conclusion that the medications prescribed by Hamilton's authorized treating physician and subsequently re-prescribed by other physicians were not reasonable and necessary. Thus, the Commission's decision displays no substantial basis for denying payment of expenses incurred for these prescribed medications over the time period at issue. This case is reversed and remanded for determination of the appropriate award of benefits for payment of expenses incurred for prescribed medications related to Hamilton's compensable injury.

Reversed and remanded.

GLOVER and ROAF, JJ., agree.