2009 Ark. App. 200

**James W. GOYNE, Appellant,**

v.

**CRABTREE CONTRACTING CO., INC. & AIG Claim Services, Inc., Appellees.**

No. CA 08–1152.

Court of Appeals of Arkansas.

March 18, 2009.

Rehearing Denied April 22, 2009.

Philip M. Wilson, Little Rock, for appellant.

Worley, Wood & Parrish, P.A., by: Melissa Wood, Little Rock, for appellees.

RITA W. GRUBER, Judge.

This appeal arises from the June 24, 2008 decision of the Workers' Compensation Commission denying payment for an EMG diagnostic study in connection with James W. Goyne's compensable back injury. Goyne presents a single point on ap-

peal: when the Commission designates a new treating physician who recommends additional diagnostic testing, it is error for the Commission to refuse to require the respondents to pay for the testing. Goyne argues that, assuming there exists a logical and reasonable basis for the recommended additional testing and treatment, Ark.Code Ann. § 11–9–514(a)(3)(A) contemplates that the respondent must pay for the regimen of diagnostic testing and treatment.[1] We do not disagree with his argument. The controlling factor in this case, however, is not what the statute contemplates but whether the recommended testing was shown to be reasonable. For the reasons explained herein, we affirm.

The following stipulations were made at the hearing before the administrative law judge on December 18, 2007: Goyne sustained a compensable injury to his lower back on June 4, 2004; respondents paid temporary total disability benefits until February 3, 2005, at which time they accepted and paid a five-percent permanent impairment rating assessed by Dr. Scott Carle; Goyne subsequently petitioned and received a one-time change of physicians to Dr. Harold Chakales on April 6, 2007; respondents paid for the initial evaluation by Dr. Chakales; and respondents controverted Goyne's entitlement to additional diagnostic studies and medical treatment. By the parties' agreement, the sole issue presented for determination was whether Goyne was entitled to an EMG study recommended by Dr. Chakales. The law judge entered an order awarding Goyne additional medical tests and treatment; the Commission reversed in a 2–1 decision.

"An employer shall promptly provide for an injured employee such medical . . . services . . . as may be reasonably necessary in connection with the injury received by the employee." Ark.Code Ann. § 11–9–508(a) (Supp. 2007). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Wal–Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark.App. 248, 205 S.W.3d 181 (2005). A claimant may be entitled to ongoing medical treatment after the healing period has ended if the treatment is geared toward management of the compensable injury. *Patchell v. Wal–Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004).

We view the evidence and all reasonable inferences deducible therefrom in the light

---

1. Ark.Code Ann. § 11–9–514(a)(3)(A) (Repl. 2002) reads in pertinent part:

(i) The employer shall have the right to select the initial primary care physician from among those associated with managed care entities certified by the commission as provided in § 11–9–508.

(ii) Where the employer has contracted with a managed care organization certified by the commission, the claimant employee, however, shall be allowed to change physicians by petitioning the commission one (1) time only for a change of physician to a physician who must either be associated with the managed care entity chosen by the employer or be the regular treating physician of the employee who maintains the employee's medical records and with whom the employee has a bona fide doctor-patient relationship demonstrated by a history of regular treatment prior to the onset of the compensable injury but only if the primary care physician agrees to refer the employee to the managed care entity chosen by the employer for any specialized treatment, including physical therapy, and only if the primary care physician agrees to comply with all the rules, terms, and conditions regarding services performed by the managed care entity chosen by the employer.

most favorable to the Commission's findings and affirm if they are supported by substantial evidence, or evidence a reasonable person might accept as adequate to support a conclusion. *Singleton v. City of Pine Bluff*, 97 Ark.App. 59, 244 S.W.3d 709 (2006). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *White v. Frolic Footwear*, 59 Ark.App. 12, 952 S.W.2d 190 (1997). Where, as here, a claim has been denied because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Williams v. Ark. Oak Flooring Co.*, 267 Ark. 810, 590 S.W.2d 328 (Ark. App.1979).

██ The evidence viewed in the light most favorable to the Commission's decision is as follows. A June 4, 2004 x-ray of Goyne's lumbar spine, taken in the emergency room on the date of his compensable injury, showed "normal lumbar spine" with no compression fracture; L5–S1 narrowing was noted, and a diagnosis of acute low back pain was made. A physical therapist's initial evaluation on June 24, 2004, noted the diagnosis of acute back strain and the presence of muscle spasms; a notation of "good progress ... but pain continues to return" was made at the final session on August 27, 2004. On January 27, 2005, Dr. William E. Ackerman III detected no muscle spasms and pronounced maximum medical improvement; he noted that Goyne had exceeded normal healing time for the assessed "sprain/ strain injury" and had received no relief from a diagnostic/therapeutic injection.

On February 3, 2005, Dr. Scott Carle assessed Goyne with a five-percent permanent impairment rating and opined that he was not likely to benefit from "additional medicalization" (sic). An August 14, 2006 hospital record showed that Goyne presented with complaints of low back pain after hitting his head when he slipped and fell on a wet floor.[2] The hospital report included a diagnosis of back sprain and a medical history of "torn sciatic nerve 2 year." A radiology report on the same date noted mild narrowing of L5–S1 disc space with no compression fracture and mentioned that an MRI of the lumbar spine might be considered for further evaluation.

In an order of April 6, 2007, the Commission approved a change of physicians from Dr. Carle to Dr. Chakales, who in an office visit of May 9, 2007, saw Goyne and diagnosed lumbar disc syndrome with nerve-root irritation. Dr. Chakales noted Goyne's complaints of low-back and bilateral leg pain, as well as right-arm numbness, and the presence of degenerative disc disease shown by x-rays the same day. Dr. Chakales wrote, "I would recommend we obtain an EMG of [Goyne's] back and both legs. He is to return to see me in two weeks." Respondents paid for the initial visit to Dr. Chakales but refused to provide the EMG study he recommended for the purpose of determining the nature and extent of Goyne's injury.

Upon recounting Dr. Ackerman's pronouncement of maximum medical improvement on January 27, 2005, and Dr. Carle's assignment of a five-percent impairment rating on February 3, 2005, the Commission found that Goyne had reached the end of his healing period on January 27, 2005. While recognizing that a claimant may be

---

**2.** The fall occurred in a jail where Goyne was held for failure to pay child support, which he attributed to his inability to work after his work-related back injury.

entitled to ongoing medical treatment after the end of the healing period, the Commission found that Goyne had not proven the EMG to be reasonably necessary in connection with his compensable injury. The Commission explained its decision as follows:

> The respondents have provided appropriate medical treatment, physical therapy, and pain management services. No physician has opined that surgery will be required. The decision of the administrative law judge is reversed.

It is clear that, after granting Goyne the change of physicians to Dr. Chakales, the Commission simply assigned greater weight to the earlier records of Drs. Carle and ₆Ackerman than to his new doctor's recommendation for a diagnostic EMG. The Commission's ruling that Goyne did not show the testing to be reasonably necessary was based on the Commission's finding that appropriate medical treatment, physical therapy, and pain management services had been provided. Thus, the Commission's decision displays a substantial basis for the denial of Goyne's claim for payment of the EMG test that his new physician recommended.

Affirmed.

GLOVER and MARSHALL, JJ., agree.