
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-128

| | |
|---|---|
| ERNEST E. RICE<br><br>APPELLANT<br><br>V.<br><br><br>BOYD METALS and TRAVELERS INSURANCE COMPANY<br><br>APPELLEES | **Opinion Delivered** September 2, 2015<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G007649]<br><br><br>REVERSED AND REMANDED |

**CLIFF HOOFMAN, Judge**

Appellant Ernest Rice appeals from a December 23, 2014 opinion by the Arkansas Workers' Compensation Commission ("Commission") affirming and adopting the findings of fact and conclusions of law made by the Administrative Law Judge ("ALJ") in favor of appellees Boyd Metals and Travelers Insurance Company. On appeal, appellant contends that the Commission erred in finding that appellant had not proven by a preponderance of the evidence that the additional medical treatment recommended by Dr. Carl Covey was reasonable, necessary, and causally related to appellant's work injury. We reverse and remand.

It is undisputed that appellant sustained multiple compensable injuries in August 2010 to his back, shoulder, and neck during a motor-vehicle accident. Additionally, it was undisputed that the applicable compensation rates were $494 for temporary-total disability and $371 for permanent partial-disability benefits and that appellant was assigned a twenty-seven percent impairment rating to the body as a whole. However, appellees contested appellant's

entitlement to additional medical treatment by Dr. Covey, and a hearing was held before the ALJ on this issue.

At the hearing, Ms. Donna Rice, appellant's wife, testified that appellant was initially treated at UAMS after the accident. He was taken to UAMS by MedFlight and had surgery on his right shoulder and a two-level spinal fusion between T-12 and L-2. She further explained that Dr. William Doss prescribed him pain medications after his injury, including two narcotic medications. Ms. Rice testified that the narcotic medications made appellant very drowsy but that he was not addicted to any of the narcotic medications.

She explained that, approximately a year later, appellant began seeing Dr. Barry Baskin after Ms. Karen Miller, a nurse case manager, referred appellant to see him. After seeing Dr. Baskin, appellant was sent to Rosmoff, a rehabilitation center in Miami, Florida, based on Ms. Miller's suggestion. Ms. Rice testified that they were told that the center was for physical and occupational therapy to help appellant manage his pain and be more physically active. While he was there, the center took him off his narcotic medications, and she acknowledged that the center did treat some patients for drug rehabilitation. After the one-month program, appellant only took non-narcotic medications, including Gabapentin, Ibuprofen, Tramadol, and Cymbalta, and he saw Dr. Baskin for approximately two years. During that time, she testified that Dr. Baskin suggested that appellant receive an epidural and a muscle stimulator; however, appellant never received either treatment. Ms. Rice testified that, after her husband's condition worsened, he exercised his option to see another doctor, Dr. Covey. However, Ms. Rice testified that all of Dr. Covey's recommendations, including the recommendations

SLIP OPINION

SLIP OPINION

that were the same as Dr. Baskin's, were denied by workers' compensation insurance.

Appellant testified that he was still experiencing a lot of pain in his lower back and tail bone and numbness from his side to his knees. It was difficult for him to sit or stand for extended periods of time. He further explained that no one ever mentioned to him that he was addicted to any of his pain medications. He testified that he had no difficulties getting off the narcotic medications in the rehabilitation facility in Florida, and his pain level went from a nine or ten to a three. While he explained that he was supposed to receive a gym membership and further therapy through workers' compensation benefits according to Ms. Miller, he never received either. He did purchase a gym membership for a year out of pocket, but he did not renew it after that due to cost. He testified that, approximately a year after his rehabilitation visit to Florida, he had requested to return for a "tuneup" program, but he was never sent. Therefore, he testified that his pain subsequently returned to a level nine and that he was having difficulty walking without a cane. Thus, he explained that he was requesting some medication that would help him.

Dr. Baskin's medical notes indicated that appellant was referred to him in October of 2011 by Ms. Miller and that he recommended that appellant stop all narcotics through completing a drug rehabilitation program. On November 20, 2012, Dr. Baskin's medical notes stated that

> Gene is back in for follow up and continues to complain of pain in the low back and tailbone area. He sits on a pillow or a ball. He states that when he was in the Rosomoff Rehab Center in Miami he was getting therapy and massages and lots of things to help with his pain and now that he is at home he doesn't get that anymore. He is still off narcotics but still was wanting to get on some pain medication if possible. I told him that the only thing that I could prescribe for him would be Tramadol. He

continues on Gabapentin 400 mg in the morning and afternoon and 800 at nighttime and Ibuprofen 800 mg at bedtime. He also remains on Cymbalta 120 mg b.i.d. We discussed Tramadol. He still asked for a referral for pain management and I told him that I did not have any desire or intention to making a referral to a pain management physician. If he wants to do that he can go the route of having a change of physicians through workers' compensation and certainly has that option available to him. I am not going to sign off on getting him off drugs and then go to the trouble to get him back on drugs.

On February 18, 2013, Dr. Baskin wrote a prescription for a caudal epidural to relieve some of appellant's pain if insurance would approve. However, there was no indication that appellant ever received this treatment.

Subsequently, after appellant exercised his right to change physicians, Dr. Covey examined appellant. Dr. Covey's medical notes on February 24, 2014, stated that appellant reported that he was previously addicted to Oxycontin and Roxycodone. Therefore, Dr. Covey's notes further explained that appellant stated that "he would prefer not to be on something that strong again." Thus, Dr. Covey wrote the following recommendation and treatment plan:

> Discussed patient's pain level and location. Patient reports that the majority of his pain is in his low back. Patient states that he has had some problems with incontinence. Patient reports that he has a lot of numbness in his back and also both thighs. Patient reports that he has noticed some numbness in his left hand also. Patient states that he was once on roxicodone and oxycontin and he would prefer not to be on those medications again. Informed patient that he may be a good candidate for a pain pump and he will be given information on it today to review. Patient will also be scheduled for a medial branch nerve block to see if he will benefit from radiofrequency to help with his back pain. Patient reports that he has not had any xrays in several years. Patient will be given an order for cervical and lumbar xrays today. Patient will also be scheduled for an MRI of his lumbar spine to determine the cause of the numbness in his legs and low back. Patient will start Fentanyl 25 mcg every 72 hours and increase his tramadol to 1–2 PO TID. We will also write for patient's gabapentin and ibuprofen. Patient will RTC in 4 weeks for follow up and evaluation.

However, the new case manager reported to Dr. Covey that appellees were only going to

cover the one-time visit with Dr. Covey and were not "going to cover any test/medication."

After the hearing, the ALJ filed its opinion on August 29, 2014. The opinion outlined

a detailed description of the facts and evidence presented at the hearing. Additionally, the ALJ

specifically made the following findings:

> The claimant contends that on August 25, 2010, he sustained injuries to his back, shoulder and head. Claimant underwent a two level lumbar fusion as a result of his back injury. Claimant had a change of physician from Dr. Baskin to Dr. Covey, and has been seen for one evaluation. Dr. Covey prescribed medications and treatment. Respondents have refused the medication and to authorize treatment prescribed by Dr. Covey and refused to allow claimant to return to Dr. Covey for additional treatment and/or examinations. Respondents took this action aware that claimant was receiving medications from Dr. Baskin and had been for a substantial period of time. Claimant contends he should be allowed reasonable and necessary medical care prescribed by Dr. Covey.
>
> The respondents contend claimant has been through drug rehabilitation, at the expense of respondent, to be treated for narcotic drug addiction. The medication being prescribed by Dr. Covey is narcotic in nature and is not reasonably necessary given the claimant's history of abuse and addiction.
>
> . . . .
>
> The respondents accepted the claimant's injuries as a result of his motor vehicle accident as compensable and paid medical expenses, including shoulder and spinal surgery. Claimant now seeks additional medical treatment in the form of pain management, including prescription of narcotic pain medication. Respondents contend that any need for additional pain management, and specifically the prescription of narcotic pain medication, is not reasonable or necessary or related to the work-related injury.
>
> . . . .
>
> The medical evidence is that the claimant developed an addiction to narcotic pain medication after on-going medical treatment with Oxycontin and Roxycodone. The claimant was sent to a drug treatment and rehabilitation center at the expense of the workers' compensation insurance carrier to get him off narcotics at the recommendation the case manager and his treating physician, Dr. Barry Baskin. When the claimant returned home from the program, he testified that he was completely off narcotics, physically active, and his pain levels had decreased from a level of nine or ten

SLIP OPINION

to three. However, the medical records reflect that within six months, the claimant was seeking pain medications in the form of narcotics from Dr. Baskin who refused to prescribe the pain medications requested. When Dr. Baskin continued to treat the claimant with non-narcotic medications, i.e. Tramadol, Gabapentin, Ibuprofen, and Cymbalta, and recommended an epidural nerve block, the claimant sought a referral from Baskin to a pain management doctor. Dr. Baskin stated that he did not have any desire or intention of making a referral to a pain management physician. He stated that he did not want to "sign off on getting him off drugs and then go to the trouble to get him back on drugs." The claimant then requested a change of physician to Dr. Carl Covey. Dr. Covey recommended the continued use of the previous medications, the epidural injection, and a pain pump. However, he also recommended the use of Fentynal, a narcotic, in low dosage and in patch form.

In light of the medical history of the claimant in this case, I find that the claimant has not proven that any additional medical treatment in the form of pain management as recommended by Dr. Covey is reasonable, necessary, and causally related to his work injury.

Subsequently, on December 23, 2014, the Commission, in a two-to-one majority opinion, affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses

and the weight to be given to their testimony are within the exclusive province of the Commission. *Id*. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts, but the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). Finally, the court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*.

Arkansas Code Annotated § 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." However, a claimant bears the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Patchell*, *supra*. What constitutes reasonably necessary treatment is a question of fact for the Commission. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005).

On appeal, appellant contends that substantial evidence does not support the Commission's finding that "the claimant has not proven that any additional medical treatment in the form of pain management as recommended by Dr. Covey is reasonable, necessary, and causally related to his work injury." We agree.

It is clear from the evidence before the Commission that appellant had sustained extensive injuries in 2010 and had been receiving continuing treatment, including varying

SLIP OPINION

forms of pain management, until appellees denied further treatment in 2014. It is also clear that appellant's previous physicians differed on whether narcotic prescriptions should be used in appellant's treatment, and there was conflicting evidence regarding whether appellant previously was addicted to his prior narcotic medications. Although appellant contested whether he was previously addicted to Oxycontin and Roxycodone, the medical notes of both Dr. Baskin and Dr. Covey indicate otherwise, and it is within the province of the Commission to reconcile this conflicting evidence. *Patchell*, *supra*.

Instead of denying additional narcotic medications based on the evidence of appellant's addiction history, the Commission, by adopting the ALJ's opinion, specifically found that the "claimant has not proven that *any* additional medical treatment in the form of pain management as recommended by Dr. Covey is reasonable, necessary, and causally related to his work injury." (Emphasis added.) However, there was no medical proof or support cited by the Commission that appellant's condition did not warrant any further treatment, and counsel had specifically clarified during the hearing that "all additional treatment by Doctor Covey" was at issue before the Commission. In fact, the Commission's conclusion ignores its own findings that appellant had changed physicians from Dr. Baskin to Dr. Covey and that both Dr. Baskin and Dr. Covey prescribed and recommended many of the same non-narcotic medications and forms of treatment. Therefore, the Commission's finding that the claimant has not proven that he is entitled to any additional medical treatment in the form of pain management is not supported by substantial evidence, because fair-minded persons could not have reached the same conclusion if presented with the same facts. Thus, we reverse and

remand the Commission's decision and direct that it award additional medical benefits consistent with this opinion.

Reversed and remanded.

ABRAMSON, J., agrees.

GRUBER, J., concurs.

**RITA W. GRUBER, Judge, concurring.** I wholeheartedly agree that reasonable minds could not arrive at the Commission's conclusion that Mr. Rice failed to prove that any additional medical treatment in the form of pain management recommended by Dr. Covey is reasonable and necessary for the treatment of his compensable injury. I write to express my concern about how the insurer and the Commission viewed Mr. Rice's need for medical treatment after he returned from Florida.

I applaud the insurer's decision to include the one-month residential-rehabilitation and therapy program as part of his medical treatment, but I wish to express my concern about the lack of follow-up after Mr. Rice successfully completed the residential-rehabilitation program. Mr. Rice reported that his pain decreased from level ten to level three as a result of the program and that his physical abilities greatly improved without the need for narcotic medications. However, the level returned to nine after he was not referred for the aftercare recommended by the rehabilitation program, which included physical therapy and gym membership. He was also denied additional treatment in the form of pain management recommended by both Dr. Baskin and Dr. Covey. Mr. Rice's request to return to the program for help was denied, and the respondents contested

additional medical care recommended by Dr. Covey primarily because Mr. Rice had once been through drug rehabilitation.  The laudable rehabilitation, in my opinion, was undermined by the respondents' refusal to follow the aftercare recommendations, leading to pain relapse and the need for further medication management as recommended by both Dr. Baskin and Dr. Covey.

A primary purpose of our Workers' Compensation Act is to pay reasonable and necessary medical expenses for each legitimately injured worker and then to return the worker to the work force.  Ark. Code Ann. § 11-9-101(b) (Repl. 2012).  I believe it should be the public policy of the state to follow the purpose of the Act and, when necessary, to provide rehabilitation that meets the needs of each individual worker.  Had the aftercare been provided in this case, I believe the outcome would have resulted in a drug-free individual who conceivably would have returned to the workplace.  Nobody wants prescription-drug- addiction outcomes in our state.  The rehabilitation program in Florida appears to be successful in addressing this issue.  Why not replicate this program of treatment for legitimately injured workers in Arkansas?

*Jensen Young & Houston, PLLC*, by: *Terence C. Jensen*, for appellant.

*Michael E. Ryburn*, for appellees.