

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–13–310

| | |
|---|---|
| ROSE BUTLER<br><br>APPELLANT<br><br>V.<br><br>LAKE HAMILTON SCHOOL DISTRICT, RISK MANAGEMENT RESOURCES, and ARKANSAS SCHOOL BOARDS ASSOCIATION DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br><br>APPELLEES | **Opinion Delivered** December 4, 2013<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. F800967]<br><br><br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**BRANDON J. HARRISON, Judge**

Rose Butler appeals from the Workers' Compensation Commission's decision to deny her certain benefits. She argues that the Commission mistakenly found that she had reached the end of her healing period in July 2009 and was therefore not entitled to receive temporary-total-disability benefits. She also believes the Commission wrongly concluded that she was not entitled to treat with Drs. Bodemann, Burba, Ackerman, and Hefley.

The Lake Hamilton School District, Risk Management Resources, and Arkansas School Boards Association Death & Permanent Total Disability Trust Fund have cross-appealed. The issue on cross-appeal is whether the Commission erred in awarding Butler medical treatment from Drs. Pellegrino and Archer.

I. *Temporary-Total-Disability Benefits*

For more than eight years, Rose Butler worked for the Lake Hamilton School District preparing school lunches for children. The parties stipulated that, in November 2007, Butler sustained a compensable injury to her left shoulder, arm, and hand when she tripped while reaching for the microwave in the school kitchen. Butler, who was near seventy years old when injured, received a shoulder surgery in February 2008, wrist surgery in September 2008, and a second shoulder surgery in December 2008. The School District's insurance carrier authorized these surgeries as treatment for Butler's compensable work injury. Dr. Michael Young performed the surgeries.

Butler continued to have problems with the left side of her upper body, and the carrier allowed her to see Dr. Annette Meador in March 2009 for more treatment. Dr. Meador recommended a series of stellate ganglion blocks and a MRI. In early June Meador noted that Butler had "reflex sympathetic dystrophy" in her left upper extremity, but that "overall she is better than prior to her first evaluation [in March]." Dr. Meador soon released Butler from her care, noting "I believe she [Butler] has reached maximum improvement and is no further in need of any stellate ganglion blocks." She also recommended that Butler receive a functional-capacity evaluation and a permanency rating from Dr. Young.

Butler participated in a functional-capacity evaluation in late June; its results were deemed unreliable for various reasons.

Butler testified at the hearing before the administrative law judge that tremors in her left arm began the day of the functional-capacity evaluation and that she was in

tremendous pain during the exam. Dr. Young, however, agreed with Dr. Meador that Butler had reached her maximum medical improvement by July 2009. Dr. Young specifically wrote that Butler had "reached her maximum medical improvement. I do not think further surgery is warranted at this point." He then gave Butler a twelve percent permanent-impairment rating and recommended that she be off permanently from her job. After follow up visits in September 2009 and January 2010, Dr. Young referred Butler to two neurologists to assess the tremors in her left arm.

In July 2009, the carrier stopped paying for additional treatment. Thereafter, on her own initiative, Butler visited several unauthorized doctors about the tremors. One of those doctors, neurologist Dr. Alonzo Burba, ordered a MRI in 2010. The test showed "no dominant enhancing mass lesion or abnormality involving the left axilla or left brachial plexus." Dr. William Akerman—another unauthorized doctor—wrote in April 2011 that "it is my medical opinion that this patient is not at maximum medical improvement." He cited Butler's complex regional pain syndrome, injury to her left shoulder and rotator cuff, trapezius muscle spasms, and pain in her right knee as evidence that her healing period had not yet ended.

The administrative law judge found that Butler proved that she was entitled to additional total-temporary-disability benefits until a date yet to be determined. That decision was challenged, and the Commission reversed. It found that Butler had not proven that she was entitled to total-temporary-disability benefits after July 2009. The Commission weighed the medical evidence and found that Butler had reached the end of her healing period no later than 20 July 2009, that the left-arm tremors did not extend her

healing period, and that she did not re-enter a healing period. The Commission relied on Dr. Young's and Dr. Meador's opinions to conclude that Butler's healing period had ended in July 2009. Butler contests the Commission's decision.

When an injured employee is totally incapacitated from earning wages and remains within her healing period, she is entitled to temporary total disability. *Riggs v. B & S Contractors, Inc.*, 2010 Ark. App. 554, 377 S.W.3d 466. The healing period continues until the employee is restored as much as the permanent character of her injury will permit. *Id*. It ends when the underlying condition causing the disability becomes stable and no treatment will improve it. *Id*. When the healing period has ended is a fact-based question that the Commission must answer. *Id*. We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Research Corp.*, 87 Ark. App. 145, 151, 189 S.W.3d 449, 452–53 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*.

Here, substantial evidence supports the Commission's decision on temporary-total-disability benefits. Butler received three surgeries and other treatments to repair the workplace injuries. Her surgeon (Young) and another specialist (Meador) specifically stated that Butler had reached maximum medical improvement by July 2009. The Commission placed "significant evidentiary weight" on the 2010 MRI, which showed no gross abnormalities with Butler's brachial plexus. The Commission was entitled to weigh all the evidence and credit the medical opinions of Drs. Young and Meador over Dr. Akerman's contrary opinion on the healing-period issue. *See SSI, Inc. v. Cates*, 2009 Ark.

App. 763, 350 S.W.3d 421. We will not reverse the Commission's decision regarding which medical evidence it chooses to accept when the medical evidence is conflicting, as it is in this case. *Id.* The Commission may not arbitrarily disregard medical evidence or the testimony of any witness, *id.*, but we do not find that the Commission arbitrarily disregarded particular medical evidence.

We therefore affirm the Commission's decision that Butler did not prove that she was entitled to temporary-total-disability benefits after her healing period ended in July 2009.

## II. *Unauthorized Physicians*

Approximately eight months after the carrier had controverted any additional medical treatment, Butler saw her family physician, Dr. Michael Bodemann, who sent her to Dr. Lon Burba, a neurologist. Dr. Burba ordered tests, evaluated Butler, and eventually sent her to Dr. William Akerman for pain management. Dr. Akerman in turn recommended that Butler see Dr. Kevin Collins for a rehabilitation evaluation. Dr. William Hefley, Jr. also assessed Butler and recommended that she continue to see Dr. Burba, so he could oversee the management of her reflex sympathetic dystrophy (RSD). Dr. Hefley also wrote, "I would not want to operate now as it might exacerbate her RSD. I think her predominant pain source is the RSD."

The Commission ruled that the appellees did not have to pay for Butler's treatment with Drs. Bodemann, Burba, Ackerman, and Hefley because they were unauthorized physicians. The record shows that Butler did not petition the Commission for a change-of-physician pursuant to Ark. Code Ann. § 11-9-514(b); nor did she follow the statute's

SLIP OPINION

provisions that allow medical treatment to be authorized if certain steps are followed after the carrier controverts treatment. Ark. Code Ann. § 11-9-514(f). And Butler signed an AR-N notice document informing her that any unauthorized medical expenses were her sole responsibility. We therefore affirm the Commission's decision that the appellees do not have to pay for visits to Drs. Bodemann, Burba, Ackerman, and Hefley. Nor do the appellees have to pay for any referrals that these four doctors made.

III. *The Cross-Appeal: Additional Medical Treatment with Drs. Pellegrino & Archer*

The Lake Hamilton School District, Risk Management Resources, and Arkansas School Boards Association Death & Permanent Total Disability Trust Fund have cross-appealed, arguing that the Commission erred in awarding Butler evaluations from Dr. Pellegrino and Dr. Archer. We disagree.

As stated earlier, one of Butler's treating physicians, Dr. Young, wanted Butler to get a neurological consult regarding her left-side tremors. So Dr. Young referred Butler to neurologist Dr. Pellegrino, writing that "I think this is simply necessary to follow through with her care and try to determine where she is at this point in time." In his letter to Dr. Pellegrino, Dr. Young wrote that an "essential tremor appears to be in [Butler's] upper extremity." The office report from the same day states, "Today on exam [Butler] has developed a tremor in her left upper extremity. We discussed it and I think it is important to get her scheduled to see a neurologist. . . . We will get her in to see Dr. Pellegrino."

The carrier did not authorize Butler to see Dr. Pellegrino.

At a follow-up appointment with Butler in January 2010, Dr. Young again wrote, "she has developed a pretty significant tremor in this left arm." He then tried to refer Butler to a neurologist at UAMS, Dr. Lee Archer, to get his advice after the carrier refused to let her see Dr. Pellegrino. Butler never obtained a neurological evaluation from Dr. Pellegrino or Dr. Archer. She did receive a neurological evaluation from Dr. Burba, an unauthorized physician.

The Commission found that Butler "has proven by a preponderance of the evidence that she is entitled to additional medical benefits." It also wrote that Butler "proved she was entitled to an evaluation by Dr. Pellegrino and Dr. Archer" and that an "assessment of [Butler's] tremors by Dr. Pellegrino and Dr. Archer is reasonably necessary management of [her] injury." The cross-appellants take issue with this particular determination.

Arkansas Code Annotated section 11–9–508(a) states that "the employer shall promptly provide for an injured employee such medical treatment as may be reasonably necessary in connection with the injury received by the employee." An employee may receive ongoing medical treatment after the healing period has ended if the treatment is geared toward managing the compensable injury. *Wilkerson v. St. Edward Mercy Med. Ctr.,* 2013 Ark. App. 345, at 3. But the employee must prove by a preponderance of the evidence that medical treatment is reasonable and necessary. *Id.* What constitutes reasonable and necessary medical treatment is a question of fact that the Commission determines. *Id.* When the primary injury arises out of and in the course of the employment, the employer is responsible for any natural consequence that flows from that

injury. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 58, 968 S.W.2d 645, 649 (1998). The basic test is whether a causal connection exists between the two episodes. *Id.* When the Commission awards a claimant benefits we will affirm the decision unless fair-minded persons, presented with the same facts, could not have arrived at the Commission's conclusion. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 385, 944 S.W.2d 524, 526 (1997).

Here, the Commission found that allowing Butler's tremors to be assessed by Drs. Pellegrino and Archer was reasonably necessary for the management of her original injury:

> Whether the claimant's complaints of tremor are truly connected to the compensable injury or are feigned and nonorganic, Dr. Young attempted to refer the claimant to Dr. Pellegrino, a neurologist, to assess the claimant's left arm. The respondents did not approve treatment with Dr. Pellegrino. Dr. Young also attempted to refer the claimant to Dr. Archer at UAMS to examine the claimant's reported tremors, but the record does not indicate that the respondents allowed the claimant to see Dr. Archer. The Full Commission therefore finds that the claimant proved she was entitled to an evaluation by Dr. Pellegrino and Dr. Archer.

Cross-appellants argue that the Commission's decision to allow an additional assessment regarding Butler's left-sided tremors is not supported by substantial evidence because no objective findings "support a diagnosis regarding [Butler's] 'tremor' complaints." They also argue that no substantial proof connects Butler's tremors to her compensable injury.

There is no requirement that objective evidence, or a doctor's opinion, is required before the Commission may determine that further medical treatment in connection with a work injury is reasonably necessary. *See Evans v. Bemis Co., Inc.*, 2010 Ark. App. 65, 6–7, 374 S.W.3d 51, 55 (2010). The cases that cross-appellants cite for this proposition—

*Liaromatis v. Baxter Cnty. Reg'l Hosp.*, 95 Ark. App. 296, 236 S.W.3d 525 (2006) and *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002)—do not require us to reverse. Those cases addressed aggravations of preexisting conditions and whether the aggravations were separate compensable injuries. Here, the Commission did not rule that Butler's tremors were an aggravation of a preexisting condition or a new and separate compensable injury; so the objective-findings requirement at issue in *Liaromatis* and *Smith-Blair, Inc.* does not apply in this case.

We also disagree with cross-appellants' argument that insufficient proof connects Butler's tremors to her work injury. Whether a causal connection exists between an initial work-related injury and later problems is a question of fact that the Commission must resolve. *Jeter, supra.* This record supports the Commission's decision. As Butler points out, the cross-appellants pass over Dr. Young's 2009 note: "Today on exam she has developed a tremor in her upper left extremity. We discussed it and I think it is important to get her in to see [neurologist] Dr. Pellegrino." Dr. Young also wrote that Butler thought she had sustained permanent nerve damage to her upper extremity, and that having Dr. Pellegrino review her situation "is simply necessary to follow through with her care and try to determine where she is at this point in time." Butler had ongoing problems after she fell at work, and her treating physician recommended more evaluations. *See Patchell v. Wal-Mart Stores, Inc.,* 86 Ark. App. 230, 236, 184 S.W.3d 31, 35 (2004) (a claimant may be entitled to ongoing medical treatment after the healing period has ended if the treatment's purpose is to manage the compensable injury).

We hold that substantial evidence supports the Commission's decision to award Butler evaluations from Drs. Pellegrino and Archer.

We end with the contention that the Commission-ordered evaluations by Drs. Pellegrino and Archer are not reasonable or necessary medical treatment of Butler's compensable injury because the same types of evaluations and testing have already been done by the unauthorized doctors, including the neurologist Dr. Burba. This argument appeals to economic efficiency, but the cross-appellants do not cite any legal authority to support the contention.

IV.  *Conclusion*

We affirm the Commission on direct appeal and cross-appeal.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Philip M. Wilson*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Travis J. Fowler*, for appellees.