


Cite as 2014 Ark. App. 322

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-13-734

RAY ANTHONY WALKER

APPELLANT

V.

FRESENIUS MEDICAL CARE
HOLDING, INC., AMERICAN
CASUALTY CO. OF READING, PA, and
DEATH & PERMANENT TOTAL
DISABILITY TRUST FUND

APPELLEES

**Opinion Delivered** May 21, 2014

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[No. F604962]

AFFIRMED IN PART; REVERSED IN
PART ON DIRECT APPEAL;
AFFIRMED ON CROSS-APPEAL

## LARRY D. VAUGHT, Judge

Ray Anthony Walker sustained compensable injuries to his right-upper extremity on April 17, 2006, while working for Fresenius Medical Care Holding, Inc. (FMC), and was issued a thirty-seven-percent anatomical-impairment rating to his right-upper extremity in connection with these injuries, which was accepted and paid by FMC. He subsequently sought compensability of reflex sympathetic dystrophy (RSD) in his right hand/wrist as a natural consequence of his compensable injuries, additional medical treatment for RSD, an anatomical-impairment rating for RSD, and permanent-total-disability benefits in addition to his anatomical losses. Following a hearing, the administrative law judge (ALJ) denied Walker's claim in its entirety. On appeal, the Arkansas Workers' Compensation Commission reversed in part, finding that Walker proved his RSD diagnosis, that it was a compensable consequence of his compensable injuries, and that he was entitled to additional medical treatment for RSD. The

Commission affirmed in part, finding that Walker failed to prove his claims for an impairment rating for RSD and permanent-total-disability benefits.

Both Walker and FMC appeal from the Commission's decision. On direct appeal, Walker argues that the Commission's decisions denying him an impairment rating for his RSD condition and denying him permanent-total-disability benefits are not supported by substantial evidence. On cross-appeal, FMC argues that substantial evidence fails to support the Commission's findings that Walker sustained RSD as a compensable consequence of his right-upper-extremity injuries and that he is entitled to additional medical treatment for RSD. We reverse in part and affirm in part on direct appeal and affirm on cross-appeal.

Prior to the hearing before the ALJ, the parties stipulated that Walker suffered a compensable right-elbow injury;[1] he reached maximum medical improvement and the end of his healing period for that injury on March 27, 2008; and he was assigned a thirty-seven-percent anatomical-impairment rating to the right-upper extremity. The issues to be litigated were whether: Walker sustained RSD as a compensable consequence of his admittedly compensable right-elbow injury; he was entitled to medical treatment for RSD; he suffered an impairment rating for RSD; and he was permanently-totally disabled. Walker specifically reserved the right to litigate in the future his entitlement to temporary-total-disability benefits related to RSD.

At the hearing, Walker, then fifty-four years old, testified that he began working for FMC in 2005 as a truck driver. On April 17, 2006, he fell backward off a loading dock. The

---

[1]FMC also accepted medical treatment related to injuries to Walker's right shoulder, right wrist, and left elbow.

medical record reflects that after receiving initial treatment for neck and right-shoulder complaints, he soon thereafter began having right-wrist and -elbow pain and was referred to Dr. Jeanine Andersson. Dr. Andersson performed surgery on Walker's right wrist and elbow on September 27, 2006.

On December 11, 2006, Dr. Andersson recommended a triple-phase bone scan on Walker's right arm. The test results were interpreted as positive for RSD, and Walker was referred to Dr. Reginald Rutherford for RSD treatment. After examining Walker, Dr. Rutherford agreed with the RSD diagnosis and recommended conservative treatment that included medication and stellate ganglion blocks.[2] Walker was also subsequently diagnosed with severe nerve compression of the median and ulnar nerves in the right arm, which resulted in a second surgery by Dr. Andersson in March 2007.

Following the second surgery, in April 2007, Dr. Andersson noted that a repeat nerve-conduction study showed improvement in Walker's overall neurological status; however, Walker continued to complain of pain. Dr. Andersson also noted that Walker had not been participating in his medical care—neglecting to go to physical therapy because it "hurts too much." She noted that Walker also stated that he would not participate in future ganglion-block procedures because he did not like the way they made him feel. On June 7, 2007, Dr. Rutherford opined that Walker was not responding to treatment for RSD and that

---

[2]Drs. Carlos Roman, Brent Walker, and Michael Stone performed stellate ganglion blocks on Walker in 2007. All three doctors diagnosed Walker with complex or chronic regional pain syndrome (also characterized as RSD by the physicians in this case) of the right-upper extremity.

"psychological factors were operant pertaining to poor response." Dr. Rutherford released Walker from treatment.

On June 22, 2007, Walker presented to Dr. Andersson with continued complaints of pain. However, she reported that a CT scan of Walker's right arm showed that the fusion block was completely healed. And while Walker was insistent that he could not make a fist, Dr. Andersson's exam revealed findings consistent with finger motion. She noted "poor patient compliance," and ordered a functional capacity evaluation (FCE), which was performed on July 6, 2007.

The FCE report concluded that Walker gave an unreliable effort, with twenty of forty-three consistency measures within expected limits. Additionally, the FCE reported that Walker self-limited his behavior, magnified his symptoms, stopped many of the tests, and refused to perform other tests. Ultimately, the evaluator concluded that Walker was able to perform tasks at the sedentary work level.

Following the FCE, on July 16, 2007, Dr. Andersson evaluated Walker, noting the FCE results and inconsistencies between his complaints and her examination. Based on Walker's history of poor compliance with medical treatment and inconsistencies in his exam, she did not recommend further intervention. She stated that Walker had permanent restrictions and scheduled him for a final impairment-rating assessment. Walker was assessed and measured for an impairment rating on July 23, 2007; however, he did not participate in the testing with regard to his right hand/wrist.

Five months later, on December 14, 2007, Dr. Andersson released Walker to return to work with the restriction of "permanent loss of right hand." Then, on March 27, 2008, Dr. Andersson issued Walker a thirty-seven-percent impairment rating to his right elbow/right-upper extremity. She noted that Walker was unable to complete the right-hand range-of-motion portion of the impairment-rating assessment, and as a result, she issued Walker a zero-percent impairment to his right wrist/hand. Dr. Andersson reiterated her opinion in a November 18, 2009 letter.

On May 22, 2010, at the request of FMC, Dr. William Ackerman performed an independent medical examination (IME) of Walker. Dr. Ackerman noted that Walker had numbness and significant limitations of range of motion in his right hand and wrist. He diagnosed Walker with diabetic neuropathy and opined that he had no signs of RSD. Dr. Ackerman later authored two reports, on August 12, 2010, and September 7, 2010, advising that he had viewed surveillance video of Walker using his right-upper extremity contrary to claims made during the IME that he had no use of his right arm, hand, and fingers. Dr. Ackerman further stated that Walker had normal range of motion in the right-upper extremity and was able to perform some gainful employment where he would not have to lift heavy objects.

Walker sought and was granted a change-of-physician evaluation with Dr. Kevin Collins on March 23, 2011. Dr. Collins concluded that Walker had RSD and needed medical treatment for it—hand therapy and a referral to Dr. Ackerman. Dr. Collins contested the zero-percent impairment rating that had been issued by Dr. Andersson for RSD and opined that Walker was unable to work.

5

In June 2011, Dr. Collins referred Walker for range-of-motion and sensory studies for RSD impairment-rating purposes. Based on those studies, on October 10, 2011, Dr. Collins issued Walker a fifty-percent whole-person impairment. Thereafter, on May 2, 2012, Dr. Collins issued an amended report, stating that his prior RSD impairment rating was incorrect, changing the RSD rating to a fifty-eight-percent rating to the body as a whole. Two months later, on July 12, 2012, Dr. Collins issued a third RSD rating, concluding that Walker was entitled to a fifty-four-percent rating to the body as a whole.

At the hearing, Walker testified that he continued to suffer from constant "striking pain" in his right hand and wrist that was controlled only by pain medication. On a bad day, Walker testified, his pain ranged from between eight to ten on a scale of zero to ten. On a good day, when he had pain medicine, he estimated his pain to be at a three on the same scale. He stated that he had no feeling in the fingers on his right hand, he could not move those fingers, and he could not grip or lift anything with his right hand. He requested medical treatment for his RSD and contended that he could not work.

FMC presented the testimony of Dewayne Guice and Mark Sanders, both of whom conducted video surveillance of Walker, which was also introduced. Several depositions were submitted as evidence at the hearing. Heather Taylor, a vocational rehabilitation counselor, testified that Walker was able to work at the sedentary level that did not require the use of his right arm. She opined that he could earn a meaningful wage in an unskilled or semi-skilled position earning approximately $8 per hour, which was less than the $13.41 per hour he was earning at FMC.

SLIP OPINION

Dr. Ackerman's deposition was introduced. He testified that when he evaluated Walker, he did not have RSD. He stated that RSD is a dynamic disease—one day a patient may have symptoms and another day he may not. Dr. Ackerman acknowledged that Walker exhibited symptoms similar to RSD but attributed them to other conditions, such as carpal-tunnel syndrome, diabetic neuropathy, or thyroid problems. He also stated that RSD can occur spontaneously. Dr. Ackerman stated that based on the findings in Dr. Collins's report, he (Ackerman) would not have issued Walker a rating for RSD. However, Dr. Ackerman stated that (because RSD is dynamic) he would not disagree with other doctors who had diagnosed RSD and had issued a rating for it.

Two depositions of Dr. Collins were introduced into evidence. On April 19, 2012, Dr. Collins testified that upon his evaluation of Walker, his right arm was not functional and that he suffered from RSD. Dr. Collins stated that Dr. Ackerman was an expert in RSD and that he (Collins) sends most of his RSD patients to Dr. Ackerman. Dr. Collins was surprised that Dr. Ackerman did not diagnose RSD because Walker demonstrated three of the four diagnostic criteria. In a second deposition on July 12, 2012, Dr. Collins confirmed that he issued Walker a fifty-four-percent impairment rating to the body as a whole for RSD. Dr. Collins testified that he had observed surveillance video of Walker from 2010 and 2012 that showed him using his right hand but that video did not cause him to change his opinion regarding the impairment rating. He added that patients with RSD have good and bad days.

The ALJ issued an opinion on October 29, 2012, finding that Walker failed to establish by a preponderance of the evidence that he developed RSD (which had the effect of denying

Walker's claims for additional medical treatment and an impairment rating for RSD) and failed to establish that he was permanently and totally disabled. Walker appealed to the Commission, which reversed in part and affirmed in part. The Commission reversed the ALJ's finding that Walker failed to prove that he suffered from RSD, and instead found that Walker did suffer from RSD, that it was a compensable consequence of his compensable right-arm injuries, and that he was entitled to medical treatment for RSD. However, the Commission affirmed the ALJ in part, finding that Walker failed to prove that he suffered anatomical impairment as a result of RSD and that he was permanently and totally disabled. Both parties have appealed from the Commission's decision.

In reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's findings, and the decision will be affirmed if it is supported by substantial evidence. *Templeton v. Dollar Gen. Store*, 2014 Ark. App. 248, at 7, ___ S.W.3d ___, ___. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.*, ___ S.W.3d at ___. When a claim is denied due to the claimant's failure to prove entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires this court to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.*, ___ S.W.3d at ___. Where there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.*, ___ S.W.3d at ___. Questions of weight and credibility are within the sole province of the Commission, which is not required to believe the testimony of the claimant or of any other

SLIP OPINION

witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*, ___ S.W.3d at ___. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* at 7–8, ___ S.W.3d at ___.

We first address FMC's cross-appeal because our disposition of it affects one of Walker's points on appeal. FMC argues that substantial evidence fails to support the Commission's finding that Walker suffered RSD as a consequence of his compensable right-arm injuries. FMC focuses its argument on the testimony of Dr. Ackerman, an expert on the diagnosis and treatment of RSD, who concluded that Walker did not have RSD. FMC points out that Dr. Ackerman did not observe two of the objective diagnostic criteria—swelling or discoloration—for RSD during his examination of Walker. FMC contends that the symptoms Walker has are caused not from RSD but from some other medical condition unrelated to his compensable injuries, i.e., diabetic neuropathy, carpal-tunnel syndrome, or thyroid abnormalities. FMC points to Dr. Ackerman's testimony that Walker's statements, that he had no use of his right hand, were contradicted by his actual ability to use it, as demonstrated in the surveillance video. Finally, FMC argues that Dr. Ackerman's conclusions are corroborated by other medical evidence that Walker was magnifying his symptoms and was noncompliant with medical treatment, along with surveillance video that showed he was capable of moving his right arm/hand.

If an injury is compensable, then every natural consequence of that injury is also compensable. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 263, 284 S.W.3d 91, 99 (2008) (citing *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000)). The basic test is whether there is a causal connection between the two episodes. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 58, 968 S.W.2d 645, 649 (1998).

The Commission found that Walker was properly diagnosed with RSD and that the RSD was a natural consequence of his compensable right-arm injuries. In reaching these findings, the Commission relied on the following facts (1) the parties stipulated that Walker suffered a compensable injury to his right elbow, (2) Walker had surgery on his elbow and wrist, (3) a triple-phase bone scan was positive for RSD, and (4) Drs. Andersson, Rutherford, Collins, Walker, Stone, and Roman diagnosed Walker with RSD. The Commission acknowledged Dr. Ackerman's opinion that Walker did not have RSD; however, it afforded little weight to that opinion, noting that Dr. Ackerman testified that he would not disagree with other doctors' diagnosis of RSD.

We hold that substantial evidence supports the Commission's findings that Walker suffered from RSD and that the RSD was a compensable consequence of his compensable injuries. The compensable injuries to his right-upper extremity resulted in two surgeries. Objective testing to the right-upper extremity was positive for RSD. And six doctors diagnosed him with and treated him for RSD. This is substantial evidence supporting a causal connection between the compensable incident and the RSD. While Dr. Ackerman's opinion was contrary, it is within the Commission's province to weigh all the medical evidence and to determine what

is most credible. *Weaver v. Ark. Dep't of Cor.*, 2013 Ark. App. 158, at 4. Accordingly, we affirm the Commission's finding that Walker's RSD was a compensable consequence of his compensable injuries, and we affirm the cross-appeal on this point.

The Commission also awarded Walker additional medical treatment for RSD. Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) states that "the employer shall promptly provide for an injured employee such medical . . . as may be reasonably necessary in connection with the injury received by the employee." The employee must prove by a preponderance of the evidence that medical treatment is reasonable and necessary. *Butler v. Lake Hamilton Sch. Dist.*, 2013 Ark. App. 703, at 7, ___ S.W.3d ___, ___. What constitutes reasonable and necessary medical treatment is a question of fact that the Commission determines. *Id.*, ___ S.W.3d at ___.

The Commission's decision to award additional medical treatment to Walker for his RSD was based on its findings that the condition was a compensable consequence and that Dr. Collins, on March 23, 2011, recommended that Walker see a hand specialist and a physical therapist for it. This is substantial evidence supporting the Commission's decision that additional treatment was reasonable and necessary, and we affirm the award of additional medical treatment for RSD. Accordingly, we affirm the cross-appeal on this point.

Our holdings on the cross-appeal lead us to Walker's first point on direct appeal—that substantial evidence fails to support the Commission's finding that he suffered no permanent impairment as a result of his RSD. Walker argues that the Commission erred in finding that his RSD was a natural consequence of his compensable injuries, awarding medical treatment for

RSD, but then denying an impairment rating for RSD. He contends that the Commission also erred in relying on Dr. Andersson's 2008 zero-percent impairment rating to the hand, instead of relying on Dr. Collins's more recent 2012 fifty-four-percent impairment rating to the body as a whole.

"Permanent impairment" has been defined as any permanent functional or anatomical loss remaining after the healing period has ended. *Main v. Metals*, 2010 Ark. App. 585, at 9, 377 S.W.3d 506, 511 (citing *Johnson v. Gen. Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994)). Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. *Main*, 2010 Ark. App. 585, at 9, 377 S.W.3d at 511 (citing Ark. Code Ann. § 11-9-704(c)(1)(B)).

While the parties' briefs debate the findings of Drs. Andersson and Collins on the impairment-rating issue, we do not reach the merits because it is premature based on our holdings affirming the compensability of Walker's RSD and his entitlement to medical treatment for RSD. Based on these holdings, the issue of whether his RSD has stabilized and/or has been as far restored as the permanent nature of his injury would permit is unknown. In other words, whether Walker is in his healing period for RSD is unknown.[3] Because a determination of permanent impairment for Walker's RSD is premature, we reverse the Commission's decision that Walker sustained a zero-percent impairment rating for his RSD and remand for proceedings consistent with our holding.

---

[3]We note that at the hearing before the ALJ, Walker's counsel, citing Dr. Collins's medical-treatment recommendations, specifically reserved for future litigation the issue of whether Walker was entitled to additional TTD benefits for RSD.

For his final point on appeal, Walker challenges the Commission's decision finding that he failed to prove he was permanently and totally disabled. Where a claimant has a scheduled injury, as Walker did in this case,[4] he may be entitled to permanent and total disability benefits where he proves he is unable, because of his compensable injury, to earn any meaningful wages in the same or other employment. Ark. Code Ann. §§ 11-9-519(e)(1) (Repl. 2012); 11-9-521(g) (Repl. 2012); *McDonald v. Batesville Poultry Equip.*, 90 Ark. App. 435, 440–41, 206 S.W.3d 908, 912 (2005) (holding that the Commission erred in finding that a claimant who had suffered a scheduled injury was prohibited under Ark. Code Ann. § 11-9-521(g) from bringing his claim for permanent-total disability). The burden of proof shall be on the employee to prove inability to earn any meaningful wage in the same or other employment. Ark. Code Ann. § 11-9-519(e)(2). The Commission is charged with determining disability based on a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Emerson Elec. v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001). The claimant's motivation to return to work, or lack thereof, is also a factor that can be considered when determining an employee's future earning capacity. *Templeton*, 2014 Ark. App. 248, at 8–9, ___ S.W.3d at ___.

The Commission denied Walker's claim for permanent-total-disability benefits, finding that his testimony that he was unable to perform any type of gainful employment within his permanent restrictions was "not worthy of belief." The Commission found that Walker's unreliable effort and magnified symptoms during FCE testing were entitled to significant

---

[4]Walker was issued a thirty-seven-percent impairment rating to the right-upper extremity.

weight. The Commission also relied on the FCE results and Dr. Andersson's opinion[5] that Walker could work at the sedentary level. And the Commission found that Walker's activities on the surveillance video—spraying a water hose, closing a car door, carrying a large box, lifting both arms at and above shoulder level, lifting and stacking large tree limbs, raking, and driving—belied his claims that his right hand/fingers were nonfunctional. Contrary to Walker's claim, the Commission found that his right hand was functional and that he could participate in gainful employment. We hold that this is substantial evidence supporting the Commission's decision.

On appeal, Walker maintains that he is physically unable to perform any type of work. He also argues that the Commission misread the FCE results;[6] that his activities on the surveillance video are merely "mundane domestic activities," which do not equate to being able to be employed and earn a meaningful wage; that there are entries in the medical records that he cannot move his right hand/fingers; and that the vocational-rehabilitation expert concluded that Walker would no longer be able to earn the same hourly wage he earned while working for FMC.

---

[5]The Commission also relied on Dr. Andersson's comments that Walker was noncompliant with his medical treatment.

[6]Walker also contends that the individual who performed the FCE (Charles Davidson), who is not a medical doctor and was not qualified under *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to offer expert opinions, opined on Walker's mental state. Thus, argues Walker, the Commission acted outside its authority in embracing and admitting Davidson's opinion into evidence. However, this argument was not made below; therefore, it is not preserved for appeal.

Walker's arguments do nothing more than highlight the contradictions in the evidence. Where there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Templeton*, 2014 Ark. App. 248, at 7, ___ S.W.3d at ___. Questions of weight and credibility are within the sole province of the Commission, which is not required to believe the testimony of the claimant or of any other witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*, ___ S.W.3d at ___. Moreover, it is within the Commission's province to weigh all the medical evidence and to determine what is most credible. *Weaver*, 2013 Ark. App. 158, at 4. In the case at bar, on the permanent-total-disability issue, the Commission weighed the evidence against Walker, finding his claims that he could not use his right fingers and hand incredible. We will not disturb the Commission's credibility findings on appeal. Accordingly, on direct appeal, we affirm the denial of permanent-total-disability benefits related to Walker's compensable right-upper-extremity injuries.

Affirmed in part; reversed in part on direct appeal; affirmed on cross-appeal.

GLADWIN, C.J., and BROWN, J., agree.

*Robert B. Buckalew*, for appellant.

*McAnany, Van Cleave & Phillips, P.C.*, by: *Patricia L. Musick*, for appellees.