
# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-15-977

| | |
|---|---|
| FABIO RODRIGUEZ<br><br>APPELLANT | **Opinion Delivered:** April 27, 2016 |
| V.<br><br>SUPERIOR INDUSTRIES and<br>CENTRAL ADJUSTMENT<br>COMPANY<br><br>APPELLEES | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G302911]<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the August 27, 2015 opinion of the Arkansas Workers' Compensation Commission (Commission) affirming the opinion of the administrative law judge (ALJ) that appellant failed to prove his entitlement to additional medical treatment for a compensable low-back injury sustained on January 5, 2013. On appeal, appellant's sole argument is that substantial evidence does not support the Commission's decision that appellant failed to prove that he was entitled to additional medical treatment. We affirm.

Appellant suffered a compensable low-back injury on January 5, 2013.[1] On January 7, 2013, he received treatment from Dr. Konstantin Berestnev, who treated appellant with a shot of Depo-Medrol and a prescription for Nalfon. Dr. Berestnev further recommended stretching exercises for appellant and returned him to work with a lifting

---

[1] Appellees accepted appellant's injury as a compensable injury.

restriction of no more than forty pounds. His assessment of appellant found "no acute fractures or dislocations" in appellant's lumbar spine, though lumbar scoliosis was present.

Dr. Berestnev saw appellant again on January 14, 2013.[2] He gave appellant another shot of Depo-Medrol and recommended physical therapy. He noted that appellant had stated that the Nalfon "did not help."

Following a January 28, 2013 examination, Dr. Berestnev reported that appellant said "the pain in his lower back is getting [worse]. Pain radiating down both legs." He assessed appellant as having "back pain with symptoms of nonorganic back pain." He returned appellant to work with a lifting restriction of no more than twenty pounds. Appellant's prescription for Nalfon was continued and physical therapy was ordered; a prescription for Norco was added.

In his January 29, 2013 report following appellant's first physical therapy treatment on the same date, appellant's physical therapist assessed appellant as demonstrating signs "consistent with lumbar strain with radiculopathy and a possible SI joint dysfunction." He opined that appellant "would benefit" from physical therapy. The physical therapist's notes over the next four consecutive sessions stated that appellant respectively "tolerated the treatment fairly well[,]" "[was] not progressing well with his exercises[,]" "tolerates [certain] exercises moderately[,]" and "[was] making very slow progress."

---

[2] The ALJ's opinion erroneously states that appellant saw Dr. Berestnev on January 17, 2013; however, Dr. Berestnev's order form (for physical therapy), letter to appellee Superior Industries (Superior), and physician's report are all dated January 14, 2013. Appellant's three-times-per-week physical therapy was to begin on January 17, 2013, according to the approval/authorization form.

In his February 11, 2013 report, appellant's physical therapist stated that he had "made little progress" with appellant. After his visit with the physical therapist, appellant had an examination with Dr. Berestnev on the same date. Dr. Berestnev reported appellant's statement that he still had pain and that his pain was "not any better" after completing six physical therapy sessions. Dr. Berestnev stated that appellant's "pain is out of proportion to the clinical findings." His notes go on to state that

> The patient has what appears to be nonorganic back pain and since he has not improved with physical therapy, we are going to order an MRI of his lower back to look for an organic cause of his back pain. Otherwise, I am going to keep him on medication which, according to the patient helps him.

Dr. Berestnev ordered an MRI, which was performed on February 22, 2013, and revealed the following:

1. MILD DEGENERATIVE CHANGES INVOLVING THE LUMBAR SPINE WITH DISC HERNIATIONS INVOLVING THE L3-4 AND L5-S1 LEVEL.
2. MODERATE CENTRAL CANAL STENOSIS INVOLVING THE L5-S1 LEVEL PREDOMINATELY SECONDARY TO PREVIOUSLY NOTED DISC HERNIATION.

He continued treating appellant with prescriptions and physical therapy.

On February 28, 2013, Dr. Berestnev reported that appellant said he still had pain in his lower back and a "numbness and tingling sensation down [his] right leg." He ordered the opinion of a neurosurgeon. Claimant was terminated at an undefined time for a sexual-harassment matter unrelated to his compensable injury.[3]

---

[3] Appellant testified, "I think I worked there about six months after the January injury of 2013." It appears that he was terminated around the month of July based on this testimony. No other evidence exists of appellant's termination date. Accordingly, the Commission's assertion in its opinion that he testified that he was terminated "in about January 2014" is incorrect.

Despite his termination, his medical treatment continued at appellees' expense and appellant was seen by a neurosurgeon's assistant on April 2, 2013. She ordered a repeat MRI due to the poor quality of a prior MRI, noting that she would "offer an opinion regarding surgery vs. continued conservative care" after receipt of the new MRI. The impression from appellant's April 5, 2013 MRI was:

1. L3-4 CENTRAL ANNULAR TEAR WITH MODERATE DISC PROTRUSION RESULTING IN MODERATE CENTRAL CANAL STENOSIS.
2. L5-S1 CENTRAL ANNULAR TEAR WITH MODERATE DISC PROTRUSION BUT NO HIGH-GRADE CENTRAL CANAL STENOSIS.
3. SEVERE RIGHT NEUROFORAMINAL NARROWING WITH IMPINGEMENT OF THE EXITING L5 NERVE ROOT DUE TO FACET HYPERTROPHY AND FORAMINAL DISC COMPONENT.

The neurosurgeon and his assistant reviewed the findings on April 8, 2013, and found that appellant's "MRI findings are inconsistent with the patient's pain pattern and physical exam. Therefore, no surgery is recommended."[4]

On April 19, 2013, Dr. Berestnev reported that appellant said his lower back pain was getting worse so that he "cannot even sleep now." Dr. Berestnev reported that despite appellant's assertions of worsened pain, Dr. Berestnev's understanding was that the neurosurgeon "found [appellant] to be a nonsurgical candidate[.]" He stated that appellant was advised to "continue conservative management" and that he, accordingly, would continue physical therapy with prescriptions for pain management, to which appellant was "agreeable."

---

[4] The medical notes state that the MRI "was reviewed by Dr. Armstrong as well." Dr. Armstrong was the neurosurgeon.

The physical therapist's April 26, 2013 report states that appellant said "his leg pain isn't as bad" and noted that appellant was able to walk "a little more." He also stated that appellant said he was continuing to have pain down his lower right extremity that increased after exercises, but noted that appellant "declines modalities stating he is in a hurry[.]"

Dr. Berestnev reported on May 6, 2013, that appellant had completed only three of six therapy treatments due to lack of transportation. He noted that appellant continued to have signs of nonorganic back pain and stated his belief that appellant "needs to complete his physical therapy" and to "continue doing home exercises." Dr. Berestnev reported on May 20, 2013, that appellant said his lower back pain was worse "with more pain than use to." He also reported that appellant told the physical therapist that he can do the exercises at home and "doesn't really need to come to physical therapy." He noted that the physical therapist stated that appellant had not made "any" progress.

Dr. Berestnev further stated that appellant continued to have signs and symptoms of nonorganic back pain, but again opined that "[appellant's] pain is out of proportion to the clinical findings" with some continued "inconsistencies." He provided the example that appellant had back pain from "lifting his right big toe up." He noted that he did not see "any" objective findings, stating that "[i]t is pretty much a subjective pain which [appellant] is reporting." He found the discrepancy "highly suspicious for nonorganic pain" and further opined that appellant's subjective belief that he was not getting better and transportation issues with physical therapy meant he was "left pretty much with just [the option of] a functional capacity evaluation [FCE] of his back at [that] point."

On a date after his termination, but before his FCE was scheduled, appellant moved to Houston, Texas.[5] Once there, he was employed by a school district as a custodian sweeping floors approximately seven hours per day.[6]

Appellant's FCE was scheduled for May 8, 2014, in Deer Park, Texas. Appellant's attorney was notified of the appointment by letter and email on April 25, 2014, with the instruction that she notify appellant as well as notice that the therapist's office would contact appellant. Appellant's attorney contacted the attorney for appellee Superior via email on May 7, 2014, advising that appellant had only learned of the appointment on May 7, 2014, and requesting that the FCE be rescheduled for June 3, 2014. She also requested that Superior pay for appellant's transportation, noting that appellant "takes the bus everywhere" and the appointment was "about a 45 minute walk" from the bus stop. In a May 13, 2014 letter to Superior's attorney, appellant's attorney advised that appellant's appointment had been rescheduled to June 3, 2014.  In a May 29, 2014 email, Superior's attorney advised appellant's attorney that Superior would not pay for transportation, but would pay mileage after appellant attended the appointment. Appellant did not show up for the June 3, 2014 appointment.

A pre-hearing order was filed on August 22, 2014. Appellant's contention was "On January 5, 2013, the claimant injured his low-back when he slipped and twisted to catch

---

[5] Appellant testified "I moved in January, February, March—March 20, I think. 21. A month or two after I was fired I moved." This testimony makes it clear that appellant did not give a definite date for his move to Texas; therefore, the Commission's assertion in its opinion that he testified that he moved to Texas in March of 2014 is inaccurate.

[6] Appellant testified that he is "on [his] feet for seven hours because [they] get an hour lunch."

himself and then lifted a heavy rim. He has since moved to Houston, Texas." Appellees' contention was that:

> [T]hey have not denied any medical treatment. The respondents have scheduled three functional capacity evaluations and the claimant has failed to appear due to transportation issues. The respondents contend that they are not required to pre-pay transportation expenses prior to a scheduled appointment.

A hearing before the ALJ was held on November 4, 2014. The parties had previously stipulated that appellant sustained a compensable back injury on January 5, 2013. They further stipulated that the issues to be litigated before the ALJ were whether (1) appellant was entitled to additional medical treatment in Houston, Texas; and (2) appellees were required to provide transportation to appellant's medical appointments related to his compensable low-back injury. The only pertinent facts not addressed above included when appellant received notice of the FCE appointment and whether the treatment he received helped his back pain. Appellant testified that he received notice the day before the appointment at one point in his testimony, then later testified that he "[thought] it was a week" before the appointment that he was given notice thereof. When asked, he stated that "nothing [had] helped [his] back." The ALJ issued an opinion on January 27, 2015, finding that appellant failed to prove his entitlement to additional medical treatment by a preponderance of the evidence, specifically noting that he "[found] that no additional medical treatment [had] been recommended by any medical provider." The ALJ noted that this ruling mooted the issue of whether appellees were required to provide transportation for appellant to his medical appointments related to his compensable low-back injury. Appellant timely appealed to the Commission.

In its August 27, 2015 opinion, the Commission noted that appellant (1) was treated by Dr. Berestnev with injections, prescriptions, and physical therapy; (2) had no medical opinion of record indicating that he required surgery as a result of his compensable injury, but on the contrary, was specifically found not to be a candidate for surgery; (3) did not appear for his scheduled FCE, allegedly for lack of transportation and lack of financial ability to obtain transportation, though he "was able to financially afford commercial air transportation to travel from Houston to Springdale for the November 3, 2014 hearing"; and (4) "does not contend that he is entitled to a Functional Capacity Evaluation." Accordingly, the Commission affirmed the ALJ, finding that appellant failed to prove his entitlement to additional medical treatment. It further found that appellant "received reasonably necessary medical treatment in the form of medication, injections, and physical therapy." This timely appeal followed.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence.[7] Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.[8] The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission.[9]

---

[7] *Target Corp. v. Bumgarner*, 2015 Ark. App. 112, at 5, 455 S.W.3d 378, 380 (citing *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858).

[8] *Id.*

[9] *Id.*

Questions concerning the credibility of witnesses and weight of evidence, as well as the probative value of any medical evidence, are for the Commission to decide.[10] We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission.[11]

"An employer shall promptly provide for an injured employee such medical . . . services . . . as may be reasonably necessary in connection with the injury received by the employee."[12] What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact.[13] The claimant may be entitled to ongoing medical treatment after the healing period has ended if the treatment is geared toward management of the compensable injury.[14] However, it is the claimant's burden to

---

[10] *Cossey v. Pepsi Beverage Co.*, 2015 Ark. App. 265, at 3, 460 S.W.3d 824, 816 (citing *Hill v. Treadaway*, 2014 Ark. App. 185, 433 S.W.3d 285).

[11] *Walker v. Fresenius Med. Care Holding, Inc.*, 2014 Ark. App. 322, at 9, 436 S.W.3d 164, 170 (citing *Templeton v. Dollar Gen. Store*, 2014 Ark. App. 248, at 7–8, 434 S.W.3d 417, 421–22).

[12] *Tyson Foods, Inc. v. Turcios*, 2015 Ark. App. 647, at 4, 476 S.W.3d 177, 180 (quoting Ark. Code Ann. § 11-9-508(a) (Repl. 2013)).

[13] *Univ. of Ark. Public Employee Claims Div. v. Tocci*, 2015 Ark. App. 505, at 3, 471 S.W.3d 218, 220 (citing *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005)).

[14] *Id.* (citing *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004)).

establish by a preponderance of the evidence that he is entitled to additional medical treatment.[15]

On appeal, appellant argues that the Commission erred in finding that he is not entitled to additional medical treatment for his compensable low-back injury. Specifically, he argues that the continued pain stemming from his compensable injury requires an appointment with a neurosurgeon, as he asserts that he only saw the neurosurgeon's assistant; an FCE; and transportation to that FCE. Appellant points to the contradiction between Dr. Berestnev's notes that he "did not find any objective findings" beyond appellant's "subjective pain"—which appellant found to be "baffling" given the MRI results—and his own testimony regarding continued pain from his compensable injury as evidence that he "clearly needs" additional medical treatment.

We first note that, based on the brief before this court, appellant either did not raise his claim for an FCE before the Commission or abandoned it before the Commission as the Commission expressly stated in its opinion that appellant "[did] not contend that he [was] entitled to a Functional Capacity Evaluation." Because his argument that he is entitled to an FCE was not before the Commission, we do not address it here.[16]

---

[15] *Hopkins v. Harness Roofing, Inc.*, 2015 Ark. App. 62, at 7, 454 S.W.3d 751, 756 (citing *Dalton v. Allen Eng'g Co.*, 66 Ark. App. 201, 989 S.W.2d 543 (1999)).

[16] *See Smith v. Commercial Metals Co.*, 2011 Ark. App. 218, at 13, 382 S.W.3d 764, 771 (citing *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998) ("We do not consider issues that are raised for the first time on appeal."); *Michael v. Keep & Teach, Inc.*, 87 Ark. App. 48, 51, 185 S.W.3d 158, 161 ("We cannot perform appellate review until the issue raised and litigated is answered by the Commission.").

Regarding his argument that his injury requires that he see a neurosurgeon, we agree with the Commission that no additional treatment by a neurosurgeon is necessary as a neurosurgeon, and his assistant, have already ordered and reviewed an MRI of appellant's lower back and determined that he is not a candidate for surgery. Surgery, therefore, is not a reasonably necessary additional medical treatment.

We agree with the Commission that while there was medical evidence that appellant had a compensable injury—which the appellees accepted—there was no medical evidence of continued pain or injury that needed management by additional medical treatment. Furthermore, this court agrees with the Commission that all evidence showed that the treatment given did not work and that there was no indication from any of appellant's medical treatment providers that he needed or would improve from additional treatment. With there being no medical evidence supporting a need for additional medical treatment, the only evidence of such a need came from appellant's own testimony, which the Commission apparently did not find credible. This court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible.[17] Making credibility determinations and deciding what weight to give to particular pieces of evidence are within the Commission's province.[18] Where there are

---

[17] *Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 80, 250 S.W.3d 263, 272 (2007) (citing *Bray v. Int'l Wire Group*, 95 Ark. App. 206, 235 S.W.3d 548 (2006)).

[18] *Shiloh Nursing & Rehab, LLC v. Lawson*, 2014 Ark. App. 433, at 3–4, 439 S.W.3d 696, 698 (citing *Adams v. Bemis Co.*, 2010 Ark. App. 859).

contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts.[19]

Because appellant presented no evidence showing that he was entitled to additional medical treatment beyond his own testimony, which the Commission apparently deemed not credible, we affirm.

Affirmed.

GRUBER and GLOVER, JJ., agree.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellees.

---

[19] *Walker*, 2014 Ark. App. 322, at 9, 436 S.W.3d at 170 (citing *Templeton*, 2014 Ark. App. 248, at 7, 434 S.W.3d at 421–22).